## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| SEBELA PHARMACEUTICALS INC., and PERRIGO NEW YORK, INC.<br><br>        Plaintiffs,<br><br>v.<br><br>KMM PHARMACEUTICALS, LLC, STAYMA CONSULTING SERVICES, LLC, and RICK HENSON,<br><br>        Defendants. | C.A. No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Sebela Pharmaceuticals Inc. ("Sebela") and Perrigo New York, Inc. ("Perrigo" and, together with Sebela, "Plaintiffs") for their Complaint against Defendants KMM Pharmaceuticals, LLC ("KMM"), Stayma Consulting Services, LLC ("Stayma"), and Rick Henson ("Henson"), (collectively, KMM, Stayma, and Henson, the "Defendants") hereby state and allege as follows:

## PARTIES

1.     Plaintiff Sebela is a corporation organized under the laws of the State of Delaware with a principal place of business in Roswell, Georgia.

2.      Plaintiff Perrigo is organized under the laws of the State of Delaware with a principal place of business in Allegan, Michigan.

3.      Upon information and belief, Defendant KMM is a limited liability company organized under the laws of Delaware with a principal place of business in Georgia.

4.      Upon information and belief, KMM is a privately owned pharmaceutical company, whose products are advertised and marketed through all major distribution channels in the United States.

5.      Upon information and belief, Stayma is a limited liability company organized under the laws of Delaware with a principal place of business at 5400 Laurel Springs Parkway, Building 80, Suwanee, GA 30024.

6.      Upon information and belief, Henson is a citizen of Georgia who lives in Greensboro, Georgia.

7.      Upon information and belief, Henson owns and controls KMM and Stayma.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over the claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1332, and 1338, and 15 U.S.C. §§ 1116 and 1121, as this case arises under the Lanham Act.  This Court also has supplemental

jurisdiction over Plaintiffs' state and common law claims pursuant to 28 U.S.C. § 1367.

9.     At all times relevant to this lawsuit, Defendants, and one or more of their agents, have been engaged in the business of advertising, promoting, marketing, distributing, and/or selling, within the State of Georgia, including within the Northern District of Georgia, and in interstate commerce throughout the United States, the products which are the subject of this Complaint, namely, a hydrocortisone acetate 2.5% and pramoxine hydrochloride 1% cream that is marketed under NDC Codes 52187-533-01 and 52187-534-01 (hereinafter, "KMM's Unauthorized HCA/Pram Products").

10.     The Defendants are subject to personal jurisdiction in Georgia because, upon information and belief, Defendants KMM and Stayma have their principal places of business in Georgia; Defendant Henson is a citizen of Georgia; Defendants transact business in this District; Defendants have caused tortious injury in Georgia by an act or omission committed in Georgia; Defendants have caused tortious injury in Georgia by an act or omission committed outside Georgia; and/or Defendants regularly do or solicit business, engage in any other persistent course of conduct, and/or derive substantial revenue from goods used or consumed or services rendered in Georgia.

11.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b) in that all named Defendants reside in Georgia and at least KMM and Stayma reside in the Northern District, in that a substantial part of the events giving rise to the claim occurred in this District, and, separately, because Defendants are subject to personal jurisdiction in this District.

## STATEMENT OF FACTS

**A.     Sebela's Products**

12.     Sebela is in the business of marketing, promoting, distributing, and selling authorized prescription pharmaceutical products in the gastroenterology and dermatology fields, including certain hydrocortisone acetate and pramoxine hydrochloride products formerly owned by Ferndale Laboratories, Inc. (later reorganized as Ferndale Pharma Group, Inc.) ("Ferndale").

13.     From at least the 1970s, Ferndale developed, manufactured, and marketed a line of prescription products containing varying dosages of hydrocortisone acetate and pramoxine hydrochloride in cream, lotion, or ointment form (collectively, the "HCA/Pram Products"), which are currently marketed under the trademarks and trade names "PRAMOSONE" ("PRAMOSONE") and "ANALPRAM HC" ("ANALPRAM").

14.     The PRAMOSONE and ANALPRAM prescription products have been continuously on the market for over 30 years and are topical corticosteroids with anti-inflammatory, antipruritic, and vasoconstrictive qualities and are available only by prescription.

15.     In the 1970s, Ferndale submitted and received Food and Drug Administration ("FDA") approval of several ANDAs for a number of hydrocortisone acetate and pramoxine hydrochloride products, including the HCA/Pram Products.

16.     On July 1, 1988, the FDA published in the Federal Register a Notice of Opportunity for a Hearing ("NOOH") regarding the regulatory status of fixed combination drug products that contain hydrocortisone acetate and pramoxine hydrochloride, which included Ferndale's HCA/Pram Products. (53 Fed. Reg. 25013 (July 1, 1988)).

17.     Under the NOOH, the FDA required the ANDA holders to submit clinical evidence within 60 days of the NOOH showing that genuine and material issues of fact exist about the effectiveness of the drug that require an administrative hearing for resolution.

18.     In response to the 1988 FDA notice, Ferndale submitted a timely hearing request for the HCA/Pram Products. This request for hearing was affirmed

by Ferndale Laboratories, Inc., on January 3, 2011. (77 Fed. Reg. 43337 (July 24, 2012)).

19.     As recently as 2017, FDA confirmed that the HCA/Pram Products are subject to the NOOH proceedings.

20.     In 2013, Sebela acquired the right to sell and promote the HCA/Pram Products in the United States.  Sebela has marketed, promoted, and/or sold the HCA/Pram Products since that time, and has derived income and revenue therefrom. Ferndale continues to act as the manufacturer of these products.

21.     In addition to product rights, Sebela acquired all of Ferndale's regulatory rights and history concerning the HCA/Pram Products, including historical correspondence between Ferndale and the FDA.

22.     Having acquired these product rights in 2013, Sebela, either directly or as FDA agent for the ANDA owner, received and asserts the same exclusive legal rights to a hearing and other regulatory procedures under the Federal Food, Drug, and Cosmetic Act (FD&C Act), and which assertion has been affirmed by the FDA.

23.     One of the HCA/Pram Products marketed by Sebela is hydrocortisone acetate 2.5% pramoxine hydrochloride 1% cream, which is marketed under the PRAMOSONE  and  ANALPRAM  trademarks  and  trade  names  (hereinafter, "PRAMOSONE Cream").

24.    PRAMOSONE Cream is a topical preparation containing hydrocortisone acetate 2.5% w/w and pramoxine hydrochloride 1% w/w in a hydrophilic cream base containing stearic acid, cetyl alcohol, Aquaphor®, isopropyl palmitate, polyoxyl 40 stearate, propylene glycol, potassium sorbate, sorbic acid, triethanolamine lauryl sulfate, and purified water.

25.    Sebela has expended significant resources in the marketing and selling its prescription products in compliance with existing laws and regulations and derives economic benefits, including revenue and profits, through sales of PRAMOSONE Cream.

26.    Sebela enjoys a strong reputation and has developed substantial goodwill among suppliers, medical professionals, pharmacists, wholesalers, regulators, consumers and others in connection with PRAMOSONE Cream, which is manufactured in accordance with current good manufacturing practices ("cGMP").

27.    Sebela maintains contractual relationships with pharmaceutical manufacturers, pharmaceutical drug databases, insurers, wholesalers, distributors, and/or suppliers in order to make and sell PRAMOSONE Cream.  These contractual relationships result in economic benefits to Sebela, and will continue to do so in the future. These contractual relationships are standard for the industry.

**B.     Perrigo's Authorized  Cream**

28.     Perrigo is in the business of marketing, promoting, distributing, and selling authorized prescription pharmaceutical products in the gastroenterology and dermatology fields, including certain hydrocortisone acetate and pramoxine hydrochloride products.

29.     With Sebela's authorization, Perrigo markets a hydrocortisone acetate 2.5% pramoxine hydrochloride 1% cream ("Perrigo's authorized cream").

30.     Perrigo enjoys a strong reputation and has developed substantial goodwill among suppliers, medical professionals, pharmacists, wholesalers, regulators, consumers and others in connection with Perrigo's authorized cream, which is manufactured in accordance with current good manufacturing practices ("cGMP").

31.     Perrigo maintains contractual relationships with pharmaceutical manufacturers, pharmaceutical drug databases, insurers, wholesalers, distributors, and/or suppliers in order to make and sell Perrigo's authorized cream.  These contractual relationships result in economic benefits to Perrigo, and will continue to do so in the future. These contractual relationships are standard for the industry.

**C. Defendants' Unauthorized "Generic" Product**

32.     Upon information and belief, KMM is a pharmaceutical company that

is engaged in the development, acquisition and sales of drugs for the North American market.

33.    Upon information and belief, Stayma provides consulting and marketing services for KMM and KMM's Unauthorized HCA/Pram Products, including quality assurance, quality control, contract manufacturing relations, and trade distribution.

34.    Upon information and belief, Henson owns and controls a number of LLCs, including KMM and Stayma, that sell various drugs including alleged "generic" versions of brand drugs.

35.    Upon information and belief, Defendants are exploiting Plaintiffs' success by falsely marketing KMM's Unauthorized HCA/Pram Products as an unauthorized "generic" version of Sebela's PRAMOSONE Cream.

### D. Defendants Advertise and Market KMM's Unauthorized HCA/Pram Products as a Generic Substitute for PRAMOSONE Cream

36.    Upon information and belief, Defendants, directly and by implication, have represented and continue to represent to wholesalers, distributors, pharmacies, and other members of the pharmaceutical industry that KMM's Unauthorized HCA/Pram Products is a "generic" equivalent of Sebela's PRAMOSONE Cream and substitutable therefore.

37.   Upon information and belief, Defendants advertise and promote KMM's Unauthorized HCA/Pram Products as a "generic" version of PRAMOSONE Cream to wholesalers, distributors, insurance companies, pharmacies and other members of the pharmaceutical industry.

38.   KMM has advertised KMM's Unauthorized HCA/Pram Products on the pharmaceutical database, DailyMed, as an available product with a marketing start date of April 7, 2020.

39.   Upon information and belief, Defendants advertise and promote KMM's Unauthorized HCA/Pram Products as a "generic" equivalent of PRAMOSONE Cream on pharmaceutical drug databases and price lists, including Medi-Span (hereinafter, the "Drug Databases").

40.   The Drug Databases are specialized marketing channels which are used nationwide by manufacturers to advertise and promote their products.

41.   The Drug Databases are used by wholesalers, pharmacies, pharmacists, insurers, health care professionals, and others in the pharmaceutical industry to evaluate medications that are currently on the market and determine whether "generic" versions of brand-name products are available.

42.     Upon information and belief, based upon the representations of KMM to the Drug Databases, KMM's Unauthorized HCA/Pram Products have been or will be listed and "linked" on the Drug Databases as equivalent products to Sebela's PRAMOSONE cream and Perrigo's authorized cream.

43.     The listing and "linking" of products on the Drug Databases is used by pharmacies, pharmacists, wholesalers, pharmaceutical buyers, and insurance companies and others to determine whether there are any generic substitutes available for a particular brand product.

44.     Based upon the listing and linking of the products in the Drug Databases, these relevant market players believe that the linked pharmaceutical products are FDA-approved generic equivalents that are automatically substitutable for the brand name product.

45.     Upon information and belief, based upon Defendants' representations, relevant market players, including wholesalers, distributors, pharmacies, pharmacists, insurers and others, are being deceived into believing that the KMM's Unauthorized HCA/Pram Products have been reviewed or approved by the FDA as generic equivalents of Sebela's PRAMOSONE Cream.

46.     Upon information and belief, through its marketing of KMM's Unauthorized HCA/Pram Products, Defendants are also representing, expressly or impliedly, that KMM's Unauthorized HCA/Pram Products are properly substitutable for Sebela's PRAMOSONE Cream and Perrigo's authorized cream, and/or properly automatically substitutable for Sebela's PRAMOSONE Cream and Perrigo's authorized cream at the pharmacy level.

47.     Upon information and belief, Defendants' false and misleading representations have deceived wholesalers, distributors, pharmacies, pharmacists, insurers and others in the industry into believing that KMM's Unauthorized HCA/Pram Products have been reviewed or approved by the FDA as generic equivalents of PRAMOSONE Cream and that it is automatically substitutable therefore, causing Plaintiffs monetary and other harm as further detailed below.

### E. KMM's Unauthorized HCA/Pram Products is not a Generic Equivalent of or Automatically Substitutable for PRAMOSONE Cream

48.     Notwithstanding Defendants' advertising and promotional efforts, KMM's  Unauthorized HCA/Pram Products are new products that have not been approved by the FDA and is not a "generic equivalent" of Sebela's PRAMOSONE Cream, nor are they substitutable therefor.

49.     True generic drugs are "therapeutically equivalent" to their branded

rivals. "Therapeutically equivalent" drugs must be both "pharmaceutically equivalent" (that is, they have identical active ingredients, strength, and dosage form) and "bioequivalent" (that is, the bioavailability--the rate and extent to which the active ingredients are absorbed by the body--is the same).

50.     To market a drug as a "generic," the drug manufacturer or distributor must also submit an application to the FDA summarizing the testing it has performed to establish therapeutic equivalence between the referenced drug and the generic version of the drug.

51.     The majority of states, including Georgia, prohibit generic substitution of a drug for a prescribed brand-name drug unless the substitute is therapeutically equivalent to the prescribed drug.

52.     Georgia law states that substitutions are authorized "for the express purpose of making available to the consumer the lowest retail priced . . . [d]rug product which is in stock and which is, in the pharmacist's reasonable professional opinion, *both therapeutically equivalent and pharmaceutically equivalent*[.]" Ga. Code Ann. § 26-41-81(c) (emphasis added).

53.     Notwithstanding Defendants' marketing, KMM's Unauthorized HCA/Pram Products are not generic equivalents of or substitutable for PRAMOSONE Cream.

54.     KMM's Unauthorized HCA/Pram Products have not been reviewed or approved by the FDA as "generics" of PRAMOSONE Cream or any other product.

55.     KMM's Unauthorized HCA/Pram Products have not been reviewed or approved by the FDA as therapeutic equivalents of PRAMOSONE Cream or any other product.

56.     KMM's Unauthorized HCA/Pram Products are not listed as therapeutically equivalent to PRAMOSONE Cream in the Orange Book.

57.     Upon information and belief, KMM's Unauthorized HCA/Pram Products are not therapeutically equivalent to the PRAMOSONE Cream product.

58.     Upon information and belief, Defendants have not tested KMM's Unauthorized HCA/Pram Products for therapeutic equivalence to PRAMOSONE Cream.

59.     Additionally, upon information and belief, KMM's Unauthorized HCA/Pram Products are an unapproved product which Defendants did not market prior to 2020.

60.     Unlike Sebela, Defendants are not a party to the NOOH administrative process for HCA/Pram Products, which has been in place since 1988.

61.     Defendants' marketing efforts have misled consumers into believing that KMM's Unauthorized HCA/Pram Products are generic to and substitutable for

PRAMOSONE Cream and Perrigo's authorized cream, when in fact they are not.

62.     As a result of Defendants' false and misleading representations about KMM's Unauthorized HCA/Pram Products, Plaintiffs' goodwill is being harmed and will continue to be harmed and Plaintiffs will suffer eroding sales of their authorized HCA/Pram products.

63.     Upon information and belief, as a result of Defendants' false and misleading representations about its product, KMM's Unauthorized HCA/Pram Products will be improperly substituted by pharmacists who receive prescriptions written for PRAMOSONE Cream or Perrigo's authorized cream.

64.     Additionally, Plaintiffs do not and cannot control the safety, effectiveness, or quality of KMM's Unauthorized HCA/Pram Products.

65.     Doctors and patients who suffer bad or disappointing experiences such as denial of coverage for PRAMOSONE Cream or Perrigo's authorized cream, or suffer adverse reactions with KMM's Unauthorized HCA/Pram Products, are likely to attribute such negative experiences to Plaintiffs and PRAMOSONE Cream or Perrigo's authorized cream, thereby further harming PRAMOSONE Cream or Perrigo's authorized cream sales and Plaintiffs' goodwill.

**F.  The Resulting Harm to Plaintiffs**

66.     Upon information and belief, Defendants' false representations about KMM's Unauthorized HCA/Pram Products deceive members of the pharmaceutical industry into believing that it is generically equivalent to and substitutable for PRAMOSONE Cream and Perrigo's authorized cream, when in fact it is not.

67.     Wholesalers, pharmacies, pharmacists, insurers, health care professionals, and others in the pharmaceutical industry are likely to be deceived and, upon information and belief are actually being deceived, by Defendants' false and misleading representations about KMM's Unauthorized HCA/Pram Products.

68.     Upon information and belief, Defendants know that their marketing of KMM's Unauthorized HCA/Pram Products is likely to deceive and is actually deceiving drug wholesalers, distributors, pharmacies, pharmacists, and others in the industry about the nature, characteristics, and qualities of KMM's Unauthorized HCA/Pram Products and will cause improper refusal of insurance coverage for PRAMOSONE Cream and Perrigo's authorized cream, loss of formulary listing or reduced formulary coverage for PRAMOSONE Cream and Perrigo's authorized cream, and improper substitution of KMM's Unauthorized HCA/Pram Products for PRAMOSONE Cream and Perrigo's authorized cream.

69.     Upon information and belief, Defendants have not only engaged in the false advertising and marketing of KMM's Unauthorized HCA/Pram Products, but have also done so willfully.

70.     Through these and other false and misleading representations, Defendants have and will continue to cause harm to the reputation and goodwill that Sebela and Ferndale have developed over thirty (30) years in the industry and, have caused and will continue to cause Plaintiffs to lose both revenue and market share.

## COUNT I

### False Advertising Under the Lanham Act – 15 U.S.C. § 1125(a)

71.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though set forth fully herein.

72.     Upon information and belief, in the course of advertising and marketing the KMM's Unauthorized HCA/Pram Products, Defendants have used, in interstate commerce and in commercial advertising, false and misleading representations of fact that misrepresent the true nature, characteristics, and potential health risks of KMM's Unauthorized HCA/Pram Products.

73.     Upon information and belief, Defendants have made numerous false or misleading representations of fact about its product, including that KMM's Unauthorized HCA/Pram Products are generic equivalents to and substitutable for

PRAMOSONE Cream and Perrigo's authorized cream.

74.    Upon information and belief, Defendants' representations about KMM's Unauthorized HCA/Pram Products to members of the pharmaceutical industry constitute commercial advertising or promotion.

75.    Defendants' misrepresentations about KMM's Unauthorized HCA/Pram Products relate to inherent qualities or characteristics of KMM's Unauthorized HCA/Pram Products.

76.    Defendants' false and misleading representations are material in that they are likely to influence the purchasing decisions of wholesalers, third-party payors, pharmacists, health care professionals, insurers, and others in the pharmaceutical industry, as well as patients who use Plaintiffs' products.

77.    Defendants' representations about KMM's Unauthorized HCA/Pram Products have deceived and/or have the tendency to deceive a substantial segment of its intended audience.

78.    Upon information and belief, but for Defendants' false and misleading statements, wholesalers, third-party payors, pharmacists, health care professionals, patients, insurers, and others in the pharmaceutical industry would not list, purchase, distribute, prescribe, cover, or use KMM's Unauthorized HCA/Pram Products.

79.     Upon information and belief, Defendants' actions have been willful and deliberate.

80.     As a direct and proximate result of Defendants' actions, Plaintiffs have and will continue to suffer damage to their business, reputation, goodwill, and the loss of sales, profits, and customers.

81.     Defendants' actions as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless enjoined by this Court.

82.     Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to Defendants' continuing acts.

83.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover treble damages sustained by Defendants' actions, an accounting for profits realized by KMM, and the costs of this action.

84.     In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorney's fees.

## <u>COUNT II</u>

**Contributory False Advertising under the Lanham Act - 15 U.S.C. § 1125(a)**

85.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though set forth fully herein.

86.    Upon information and belief, Defendants are knowingly inducing or causing, and/or materially participating in, the false and misleading advertising and promotion of KMM's Unauthorized HCA/Pram Products by Drug Databases, wholesalers, pharmacies, insurers, and/or other members of the pharmaceutical industry to advertise and promote KMM's Unauthorized HCA/Pram Products as an FDA-approved "generic" product that is generically equivalent to and substitutable for PRAMOSONE Cream and Perrigo's authorized cream.

87.    Upon information and belief, Defendants knew and/or intended to participate in the false advertising of KMM's Unauthorized HCA/Pram Products by Drug Databases, wholesalers, pharmacies, insurers, and/or other members of the pharmaceutical industry.

88.    Defendants actively and materially furthered such false and misleading advertising and promotion of KMM's Unauthorized HCA/Pram Products by expressly or impliedly representing that KMM's Unauthorized HCA/Pram Products were equivalent to and/or substitutable for the PRAMOSONE Cream and Perrigo's authorized cream and, upon information and belief, by listing the product with the Drug Databases.

89.    Such false and misleading representations about KMM's Unauthorized HCA/Pram Products by Drug Databases, wholesalers, pharmacies, insurers, and/or

other members of the pharmaceutical industry have actually deceived or have the tendency to deceive a substantial segment of their audience as to the nature, quality, and characteristics of KMM's Unauthorized HCA/Pram Products.

90.    Such false and misleading representations about KMM's Unauthorized HCA/Pram Products by Drug Databases, wholesalers, pharmacies, insurers, and/or other members of the pharmaceutical industry are material and likely to influence the purchasing decisions of wholesalers, third-party payors, pharmacists, health care professionals, insurers, and others in the pharmaceutical industry, as well as patients who use Plaintiffs' products.

91.    Upon information and belief, these false or misleading representations were and are made in interstate commerce.

92.    Upon information and belief, Defendants' actions have been willful and deliberate.

93.    As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages, which includes a loss of reputation, sales, profits and customers.

94.    Defendant actions as alleged herein have caused, are causing, and will continue to cause irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

95.     Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to Defendants' continuing acts.

96.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover treble damages sustained by Defendants' actions, an accounting for profits realized by KMM, and the costs of this action.

97.     In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorney's fees.

## COUNT III

### Unfair Competition Under the Lanham Act – 15 U.S.C. § 1125(a)

98.     Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though set forth fully herein.

99.     By virtue of Defendants' false or misleading representations, as detailed above, Defendants are also liable for unfair competition under the Lanham Act.

100.    Defendants' false and/or misleading representations of fact are likely to cause confusion or mistake or to deceive as to Defendants' affiliation, connection or association with Sebela and/or the FDA.

101.    Defendants' false and/or misleading representations of fact are also likely to cause confusion or mistake or to deceive as to the origin, sponsorship, or

approval of KMM's Unauthorized HCA/Pram Products and/or Defendants' commercial activities by Sebela and/or the FDA.

102. Additionally, consumers, including purchasers, wholesalers, distributors, prescribers, insurers, and pharmacists, may be deceived into believing that KMM's Unauthorized HCA/Pram Products have been approved or authorized by Sebela and/or the FDA.

103. Moreover, Sebela has become uniquely associated with PRAMOSONE Cream, which association is being unlawfully appropriated and impaired by Defendant.

104. Plaintiffs are likely to and has been damaged by Defendants' conduct, as detailed herein. Plaintiffs are entitled to damages for Defendants' unfair competition, an accounting of profits and recovery of Plaintiffs' costs of this action.

105. Because some of the damage to Plaintiffs' reputation and the reputation of their products cannot be adequately compensated by monetary damages, and Defendants' conduct is causing irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill, Plaintiffs are entitled to temporary, preliminary, and permanent injunctive relief, enjoining Defendants from further unfair competition, including without limitation, removing the false and

misleading listings for KMM's Unauthorized HCA/Pram Products from the Drug Databases.

106.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover treble damages sustained by Defendants' actions, an accounting for profits realized by Defendants, and the costs of this action.

107.    In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorney's fees.

## COUNT IV

### Violation of the Georgia Uniform Deceptive Trade Practices Act

108.    Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though set forth fully herein.

109.    Ga. Code Ann. § 10-1-373 provides a private right of action to enforce the provisions of Ga. Code Ann. § 10-1-372.

110.    In the course of its business, Defendants have engaged and continue to engage in deceptive trade practices in violation of Ga. Code Ann. § 10-1-372(a)(1), (2), (3), (5), (7), (9), and (12) by and through their false and misleading representations of fact and conduct with respect to KMM's Unauthorized HCA/Pram Products.

111.    Upon information and belief, Defendants have willfully engaged in

these actions knowing them to be deceptive.

112.   By reason of Defendants' actions, Plaintiffs have and will continue to suffer damage to their business, reputation, and goodwill and the loss of sales and profits.

113.   Pursuant to Ga. Code Ann. § 10-1-373, Plaintiffs are entitled to injunctive relief, treble damages, and reasonable attorney's fees.

## COUNT V

### Common Law Unfair Competition

114.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs as though set forth fully herein.

115.   Defendants have intentionally and maliciously made false statements and material omissions in its marketing and sale of KMM's Unauthorized HCA/Pram Products.

116.   Through these actions, as described above, Defendants have wrongfully interfered with Plaintiffs' reasonable business expectancies concerning PRAMOSONE Cream and Perrigo's authorized cream, including expected sales.

117.   By reason of Defendants' actions, Plaintiffs have and will continue to suffer damage to their business, reputation, and goodwill and the loss of sales and profits.

118.   Plaintiffs are entitled to damages for Defendants' unfair competition, an accounting of profits made on sales of KMM's Unauthorized HCA/Pram Products and recovery of Plaintiffs' costs of this action.

119.   Defendants knew or should have known that their conduct was reasonably likely to result in injury, damage or other harm, thus warranting the award of punitive damages.

120.   In addition, Defendants' conduct is causing irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill and the reputation of their products that cannot be adequately compensated by monetary damages.   Hence, Plaintiffs are also entitled to temporary, preliminary, and permanent injunctive relief, enjoining Defendants from further marketing and sales of the products at issue.

## **COUNT VI**

**Tortious Interference with Contract and/or Prospective Contractual Relations**

121.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though set forth fully herein.

122.   Sebela maintains valid contracts and business relations and expectancies with manufacturers, pharmaceutical drug databases, third-party wholesalers, distributers, and pharmacies for the manufacture, purchase, distribution

and/or sale of PRAMOSONE Cream.

123.   Perrigo maintains valid contracts and business relations and expectancies with manufacturers, pharmaceutical drug databases, third-party wholesalers, distributers, and pharmacies for the manufacture, purchase, distribution and/or sale of Perrigo's authorized cream.

124.   Upon information and belief, Defendants know of these contracts, business relations, and business expectancies, which are standard in the industry.

125.   Upon information and belief, Defendants have acted improperly and without privilege by making false and misleading representations and material omissions in connection with the advertising, marketing and sale of KMM's Unauthorized HCA/Pram Products in comparison to, and in unlawful competition with, PRAMOSONE Cream.

126.   Upon information and belief, Defendants intentionally engaged in such unlawful activities with the intent to disrupt Plaintiffs' contracts and business relations and expectancies for the manufacture, purchase, distribution, and/or sale of the PRAMOSONE Cream and Perrigo's authorized cream.

127.   Defendants' intentional interference has induced or caused a breach or termination of Plaintiffs' contracts and business relations and expectancies.

128.   By reason of Defendants' interference with their customers, Plaintiffs

have and will suffer damage to their business, reputation, and goodwill as well as the loss of sales.

129.   In addition, Defendants' conduct is causing irreparable and inherently unquantifiable injury and harm to Plaintiffs' business, reputation, and goodwill and the reputation of their products that cannot be adequately compensated by monetary damages. Hence, Plaintiffs are also entitled to temporary, preliminary and permanent injunctive relief, enjoining Defendants from further interfering with Plaintiffs' customers.

## **COUNT VII**

### **Unjust Enrichment**

130.   Plaintiffs repeat and re-allege the allegations contained in the preceding paragraphs of this Complaint as though set forth fully herein.

131.   By maintaining the right to a hearing and regulatory procedures under the NOOH, Plaintiffs have kept PRAMOSONE® and ANALPRAM® products on the market, generating prescriptions for the drugs. Plaintiffs have further invested substantial resources in promoting its PRAMOSONE® and ANALPRAM® products.

132.   Defendants have no right to a hearing for KMM's Unauthorized HCA/Pram Products.

133.   Defendants is receiving a benefit from Plaintiffs' right to a hearing and marketing for Plaintiffs' PRAMOSONE® and ANALPRAM® through sales and dispensing of KMM's Unauthorized HCA/Pram Products, and substitution for PRAMOSONE® and ANALPRAM®.

134.   Defendants have not compensated Plaintiffs for this benefit.

135.   Defendants' failure to compensate Plaintiffs for this benefit would be unjust.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

A.   That Defendants be required to account to Plaintiffs for any and all profits derived from the sale of KMM's Unauthorized HCA/Pram Products and to compensate Plaintiffs for all damages sustained by Plaintiffs through the acts complained of herein;

B.   That this Court award compensatory, treble, punitive, and exemplary damages in favor of Plaintiffs, including general and specific damages, in an amount to be proven at trial;

C.   That this Court order Defendants to engage in corrective advertising to correct all misrepresentations identified herein;

D.   That this Court grant temporary, preliminary, and permanent injunctive

relief that requires Defendants, and all others acting in privity or in concert with them, to cease making false and misleading representations concerning the product at issue, including without limitation, requiring Defendants to withdraw the listing of KMM's Unauthorized HCA/Pram Products from the Drug Databases and recall and destroy any existing product or product packaging;

E.     That the costs of this action be awarded to Plaintiffs;

F.     That Plaintiffs be awarded costs and their reasonable attorney's fees as provided by § 35(a) of the Lanham Act, 15 U.S.C. § 1117 and Georgia law;

G.     That this Court grant all other relief to which Plaintiffs may reasonably be entitled under their causes of action; and

H.     That this Court grant such other and further relief as it shall deem just, equitable and proper.

Dated: May 5, 2020

By:  */s/   Brian Holladay*
   W. Brian Holladay
   Martenson, Hasbrouck & Simon LLP
   3379 Peachtree Road, N.E. Suite 400
   Atlanta, Georgia 30326
   Tel. (404) 909-8100
   Fax: (404) 909-8120
   bholladay@martensonlaw.com

   S. Lloyd Smith
   Brian H. Gold
   BUCHANAN INGERSOLL & ROONEY PC

1737 King Street, Suite 500
Alexandria, Virginia 22314
Tel.: (703) 836-6620
Fax: (703) 836-2021
lloyd.smith@bipc.com
brian.gold@bipc.com

*Attorneys for Plaintiffs*
*Sebela Pharmaceuticals Inc. and*
*Perrigo New York, Inc.*